UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

    Dorothy Hopkins,                              Chapter 7
                                                  Case No. 105-11188-JF

                      Debtor.
-------------------------------------------------------------x
    Dorothy Hopkins,

                      Plaintiff,                      Adv. Proc. No. 105-1133-JF

             -against-

    Foothill Mountain, Inc., Stephen Lamstein,
    Ira Gordon, Evan Horne, Glenn L. Horne,
    Harriet Horne and Sanford Meyerson,

                      Defendants.
-------------------------------------------------------------x

## **DECISION AND ORDER DISMISSING ADVERSARY PROCEEDING**

APPEARANCES:

| | |
|---|---|
| Mark Crutchfield, Esq. | Jeff Morgenstern, Esq. |
| Crutchfield & Associates, Pllc | Rappaport, Hertz, Cherson & Rosenthal, P.C. |
| 41 Schermerhorn Street #219 | One Old Country Road, Suite 320 |
| Brooklyn, New York 11201 | Carle Place, New York 11514 |
| Attorney for Plaintiff | Attorney for Defendants Foothill Mountain, |
| | Inc. and Stephen Lamstein |

David J. Doyaga, Sr.
Doyaga & Schaefer
16 Court Street, Suite 2300
Brooklyn, New York 11241
Trustee

                                       JEROME FELLER
                             United States Bankruptcy Judge

Before the Court is a motion by Foothill Mountain, Inc. ("Foothill"), and Stephen Lamstein ("Lamstein") (collectively "Defendants") to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or in the alternative to abstain under 28 U.S.C. § 1334(c) ("Dismissal Motion"). Dorothy Hopkins, the Plaintiff and Debtor herein ("Hopkins"), commenced the proceeding to obtain a determination that she is the owner of certain real property by adverse possession under state law and avoid a transfer of that property pursuant to 11 U.S.C. §§ 544 and 548. Foothill, a corporate entity owned by Lamstein, is the record title holder of the property. Hopkins is in possession of the property and has resided there since 1983.

The litigation has been marked by undisciplined efforts by the parties to obtain a favorable disposition by way of summary adjudication. The voluminous submissions by both sides, on the whole, lack meaningful analysis or reasoned discussion and, at times, border on the incoherent. A wide variety of complex issues have been presented to the Court. The dispositive inquiry, however, is the standing of Hopkins to bring this lawsuit. For the reasons hereinafter set forth, it is abundantly clear that Hopkins lacks standing. Accordingly, the Dismissal Motion is granted and the adversary proceeding is dismissed. The case trustee is granted thirty days to commence a proceeding to establish title to the disputed real property by adverse possession, failing which any such claim is deemed abandoned to Hopkins.

## I. Background

This adversary proceeding pits Hopkins, who has been in possession of real property for close to 23 years, in combat with the record title owner of that real property, Foothill. Specifically, the dispute is over ownership of a residential home and underlying real estate

known as 1453 Herkimer Street, Brooklyn, New York (the "Property"). Apparently, Hopkins now concedes that she lost ownership through a foreclosure sale in 1991 and that Foothill is the record title holder. Nonetheless, she contends that she reacquired ownership by adverse possession. Foothill opposes Hopkins' assertion vigorously. As best we can reconstruct from the papers and, at times, illegible exhibits annexed thereto, the complex and convoluted history of the dispute may be summarized as follows:

### A. The Early Years

The Property was purchased by Hopkins and her husband ("Hopkinses") from the City of New York for $6,000 in October 1983. Some five years later, they obtained a home equity loan of $47,000, secured by a mortgage on the Property. Almost immediately, the Hopkinses went into default on the home equity loan. On May 24, 1989, Bank Leumi, the holder of the mortgage, commenced a foreclosure action. The Hopkinses did not appear in opposition. On January 3, 1990, a judgment of foreclosure and sale was entered. Pursuant to the judgment, the Property was sold to RF Capital Corp. ("RF Capital") and a referee's deed was executed on January 28, 1991. The deed to RF Capital was recorded in the New York City Register's Office of Kings County on March 8, 1991. Sometime during the January 1991 – March 1991 period, RF Capital entered into a contract to sell the Property to Lamstein.

Notwithstanding the sale of the Property to RF Capital, the Hopkinses remained in possession. In February 1991, RF Capital commenced an eviction proceeding. The Hopkinses opposed the eviction proceeding, raising questions pertaining to the validity of the foreclosure sale. The matter was settled on March 8, 1991, when RF Capital, the Hopkinses and Lamstein, as contract vendee, signed a stipulation. The stipulation provided for a waiver by the Hopkinses

of any objections to the foreclosure sale and, upon compliance with certain conditions, contemplated another sale of the Property, this time to two daughters of the Hopkinses. Under the stipulation, the Hopkinses were to pay use and occupancy of $1,000 per month pending the sale to their daughters.

The terms of the stipulation were never fulfilled. The Property was not sold to the daughters of the Hopkinses and no use and occupancy was ever paid. Meanwhile, the Hopkinses continued to maintain possession and reside at the Property. Not surprisingly, Lamstein brought a separate action against RF Capital for specific performance of his purchase contract. Finally, on March 16, 1993, RF Capital conveyed the Property to Lamstein and, shortly thereafter, the deed was modified to reflect Foothill as the holder of title. The deed to Foothill was then recorded on March 29, 1993. At this point, there ensues a gap of many years in the chronicling of the dispute. No further information has been provided by the parties relating to the Property until the initiation of eviction proceedings in the summer of 2004.

### B. Foothill's Prepetition Eviction Proceeding

After service of a ten day notice to quit in July 2004, Foothill, on August 18, 2004, commenced a holdover proceeding in the Housing Part of the Civil Court, Kings County, Index No. 088059/2004, to evict the Hopkinses from the Property ("Holdover Proceeding"). The Hopkinses failed to appear in opposition and the Civil Court entered a decision and judgment of possession in favor of Foothill on December 14, 2004 ("Judgment of Possession"). On December 16, 2004, Hopkins moved by order to show cause to vacate the Judgment of Possession. In her affidavit filed in support, she stated that her failure to appear was due to sickness and that she had good defenses to the Holdover Proceeding. She asserted the following

defenses in her affidavit, i) the amount claimed was incorrect, ii) the rent was offered and refused, and iii) conditions in the apartment needed repair or services were not provided. The issue of title or ownership was not raised.

By decision and order dated January 5, 2005, the Civil Court declined to vacate the Judgment of Possession. The Civil Court ruled that execution of a warrant of eviction in favor of Foothill would be stayed until January 31, 2005, to give the Hopkinses time to vacate the Property, conditioned upon the payment of $1,000 for one month use and occupancy by January 14, 2005. The Hopkinses failed to make the $1,000 use and occupancy payment. Foothill obtained a warrant of eviction on January 19, 2005.

### C. The Bankruptcy Filing

On January 31, 2005, Hopkins filed a petition for relief under Chapter 7 of the Bankruptcy Code. The bankruptcy filing stayed the eviction of the Hopkinses from the Property. *See* 11 U.S.C. § 362(a). On February 22, 2005, Foothill moved for relief from the automatic stay to enforce the warrant of eviction. Hopkins opposed Foothill's lift stay motion, asserting for the first time that Foothill did not own the Property and that she obtained title by adverse possession in April 2001. A hearing on the lift stay motion was held on March 10, 2005. At the hearing, it became obvious that the central issue was ownership of the Property, a matter that could not be decided in the context of a lift stay motion. An adversary proceeding is necessary to determine the validity or extent of an interest in property. *See* Fed. R. Bankr. P. 7001(2). The lift stay motion was adjourned upon consent of the parties.

On April 5, 2005, Hopkins commenced the instant adversary proceeding. The main thrust of the complaint, as amended on April 19, 2005, is to obtain a determination that Hopkins

is the true owner of the Property by adverse possession. The complaint also contains causes of action alleging that the Judgment of Possession issued by the Civil Court in December 2004 was an avoidable transfer under 11 U.S.C. §§ 544 and 548.[1]

On May 6, 2005, Defendants filed a motion to dismiss the complaint pursuant Fed. R. Bankr. P. 12(b)(6) ("First Dismissal Motion"). As grounds for dismissal, Defendants asserted i) lack of standing to sue, ii) estoppel, iii) loss of ownership rights upon the foreclosure sale in January 1991, iv) failure to demonstrate all the elements comprising an adverse possession claim, v) unclean hands and laches, and vi) that the avoidance causes of action fail as a matter of law. A hearing on the First Dismissal Motion was scheduled for July 12, 2005, the date of the first pre-trial conference in the adversary proceeding. On July 11, 2005, Hopkins filed a cross-motion for summary judgment.

At the hearing on July 12, 2005, the Court advised the parties that both motions were improper. The First Dismissal Motion was in error because it impermissibly sought an adjudication of disputed material facts through the vehicle of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. And, Hopkins' cross-motion for summary judgment was also wrong in that it was premature, having been filed before any discovery whatsoever and where, on its face, there existed bitter disputes as to material facts. As the hearing progressed it was apparent that threshold issues were either ignored or inadequately addressed by the parties in their submissions and that the threshold issues required resolution before the litigation could go forward.

---

[1] In addition to Foothill and Lamstein, the complaint names five individual defendants. It appears that Foothill mortgaged the Property to these individuals in connection with a $62,500 loan to Lamstein. These people have filed affidavits with the Court stating that the underlying loan has been fully repaid.

The threshold issues identified included i) the standing of Hopkins to bring the lawsuit, ii) applicability of the *Rooker-Feldman* doctrine, iii) nature and extent of federal bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b), and iv) whether the Court should abstain under 28 U.S.C. § 1334(c). A scheduling order was entered on July 13, 2005, providing for the filing of memoranda of law addressing the threshold issues and adjourning the matter pending such submissions. By stipulation and order dated July 29, 2005, the First Dismissal Motion and Hopkins' cross-motion for summary judgment were withdrawn without prejudice. The parties submitted memoranda of law purporting to address the threshold issues. At the adjourned hearing held on November 8, 2005, to spare the parties further time and expense, the Court offered to treat the memoranda of law filed as a motion to dismiss and opposition thereto. Hopkins refused the offer.

On November 28, 2005, Defendants filed the Dismissal Motion now before the Court. Like the First Dismissal Motion, Defendants allege a multitude of grounds for dismissal in shotgun fashion. Indeed, not less than eight grounds for dismissal are asserted. Defendants contend that the adversary proceeding should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Defendants also seek dismissal under Fed. R. Civ. P. 12(b)(6) arguing that i) Hopkins lacks standing to sue, ii) the lawsuit is forbidden by the doctrine of res judicata, iii) the lawsuit is barred by New York's Real Property Actions and Proceedings Law ("RPAPL") § 747(2), iv) Hopkins lost all rights to the Property in the January 1991 foreclosure sale, v) Hopkins has failed to show all the elements necessary to sustain an adverse possession claim, vi) Hopkins is chargeable with unclean hands and laches; and vii) Hopkins has no cognizable claim to avoid transfer of the Property as a

fraudulent conveyance. In the alternative, Defendants seek abstention under 28 U.S.C. § 1334(c).

The Dismissal Motion was set down for hearing on January 5, 2006. By letter dated January 4, 2006, on the very eve of the hearing, Hopkins' counsel wrote to the Court seeking guidance on how to respond to Defendants' "confounding and vexatious" Dismissal Motion. At the hearing on January 5, 2006, the Court again reminded Defendants' counsel that the Dismissal Motion, like the First Dismissal Motion, alleged grounds for dismissal that implicated disputed material facts which could not be decided on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Hopkins was instructed to respond only to the *Rooker-Feldman*, standing, res judicata and RPAPL § 747(2) asserted grounds for dismissal, as well as the abstention issue under 28 U.S.C. § 1334(c). The grounds for dismissal under Fed. R. Civ. P. 12(b)(6) identified above as arguments iv)-vii) were denied without prejudice, and an order to that effect was entered. Hopkins then filed her papers in opposition to the Dismissal Motion. Defendants filed a reply to Hopkins' opposition and Hopkins filed a sur-reply. On February 2, 2006, the Court heard final argument and reserved decision.

## II. Discussion

As indicated earlier, the Dismissal Motion was made pursuant to Fed. R. Civ. P. 12(b(1) ("Rule 12(b)(1)") and Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). These defenses are made available under Fed. R. Civ. P. 12(b) to litigants by way of motion and are applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7012(b). Rule 12(b)(1) and Rule 12(b)(6) provide for dismissal of claims for lack of subject matter jurisdiction and for failure to state a cause of action upon which relief can be granted, respectively. When presented

with a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), a court must first decide the Rule 12(b)(1) jurisdictional issue "because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau County Med. Ctr.*, 27 F.Supp.2d 154, 158 (E.D.N.Y. 1998) (*citing Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n.*, 896 F.2d 674, 678 (2d Cir. 1990). We therefore begin our analysis by considering Defendants' contention that the adversary proceeding should be dismissed pursuant to Rule 12(b)(1).

### A. Rule 12(b)(1)

Defendants maintain that the Court lacks subject matter jurisdiction in this lawsuit based upon the *Rooker-Feldman* doctrine. *Rooker-Feldman* precludes lower federal courts from acting as appellate courts and reviewing state-court judgments. Defendants argue that the purpose of this adversary proceeding and its desired result is to declare Hopkins the owner of the Property, thereby negating the Judgment of Possession entered by the Civil Court in the Holdover Proceeding. As such, Defendants contend, the adversary proceeding seeks a determination that the Civil Court's decision was in error, and therefore runs afoul of *Rooker-Feldman*.

Defendants are mistaken in their understanding of the *Rooker-Feldman* doctrine. *Rooker-Feldman* is not applicable to this adversary proceeding. It is true that *Rooker-Feldman* precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments. *See Lance v. Dennis*, ---U.S.---, 126 S.Ct. 1198 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). However, the Supreme

Court has explained that *Rooker-Feldman* is a narrow doctrine, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284. The rationale for the restricted scope of *Rooker-Feldman* was elaborated by the Supreme Court as follows:

> A more expansive *Rooker-Feldman* rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts " 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.' " Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments. Incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act.

*Lance*, 126 S.Ct. at 1202-03 (citation omitted).

The Holdover Proceeding was a summary proceeding under state law to determine the right to immediate possession of property and not the adjudication of title. Hopkins did have a right to raise the issue of title by way of answer or counterclaim (*See* RPAPL § 713), but she failed to do so. Hopkins also could have commenced a separate action in New York State Supreme Court within sixty days after entry of the Judgment of Possession to obtain an adjudication of title (*See* RPAPL § 747(2)), but she failed to do so. In seeking a determination that she is owner of the Property in this adversary proceeding, Hopkins asserts a new or independent claim which was never adjudicated or raised in the Holdover Proceeding. The *Rooker-Feldman* doctrine does not preclude a lower federal court from exercising subject matter jurisdiction merely because the federal court ruling may be incongruous with an earlier state court disposition. As emphasized by the Supreme Court:

> If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Exxon Mobile*, 544 U.S. at 293 (alteration in original) (*quoting GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). Preclusion, of course, is not a jurisdictional matter. *See* Fed. R. Civ. P. 8(c) (listing res judicata as an affirmative defense).

Similarly, insofar as the avoidance causes of action, there can be no doubt that *Rooker-Feldman* is inapplicable. It is well established that *Rooker-Feldman* is not relevant where a federal statute specifically authorizes vitiation of a state-court judgment by a lower federal court. *See Gruntz v. County of Los Angles (In re Gruntz),* 202 F.3d 1074, 1079 (9th Cir. 2000) (*Rooker-Feldman* doctrine does not apply to writs of habeas corpus because Congress explicitly provided for the collateral attack of final state court judgments); *Plyler v. Moore*, 129 F.3d 728, 732 (4th Cir. 1997) (same); *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993) (same); *Blake v. Papadakos*, 953 F.2d 68, 71 n.2 (3d Cir. 1992) (same); *Fariello v. Campbell*, 860 F.Supp. 54, 65 (E.D.N.Y. 1994) (same). As observed by the Supreme Court in the bankruptcy context:

> It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.

*Kalb v. Feuerstein,* 308 U.S. 433, 438-39 (1940). The bankruptcy avoidance provisions represent specific bankruptcy legislation permitting federal courts to set aside state-court judgments in appropriate circumstances. *See e.g. Gruntz,* 202 F.3d at 1079 (stating that despite *Rooker-Feldman* "bankruptcy courts are empowered to avoid state judgments, *see*, *e.g.,* 11

U.S.C. §§ 544, 547, 548, 549"); *Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 583 n.22 (3rd Cir. 2005).

### B. Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Its purpose is to test the legal sufficiency of a complaint as opposed to the factual basis for the claim for relief. The issue on a motion brought under Rule 12(b)(6) is not whether a plaintiff will ultimately prevail on his claim or is likely to prevail, but whether he is entitled to offer evidence in support of his claim. *See York v. Ass'n of the Bar of the City of New York,* 286 F.3d 122, 125 (2d Cir. 2002) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of a plaintiff's claim. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants seek dismissal of the complaint under Rule 12(b)(6) on various grounds, i.e., lack of standing, res judicata, and RPAPL § 747(2). However, standing to sue is the bedrock threshold issue. Since Hopkins' lack of standing is dispositive and in light of the bewildering submissions by the litigants, we believe it unnecessary to address the res judicata and RPAPL § 747(2) arguments and decline to do so.[2]

Hopkins' lack of standing to bring this adversary proceeding is predicated upon fundamental bankruptcy law and principles. The adverse possession claim is a prepetition cause of action and as such is an asset of the bankruptcy estate which must be administered by a

---

[2] For similar reasons, we do not address the issue of abstention under 28 U.S.C. § 1334(c) raised by Defendants.

trustee and not a debtor. The avoidance claims are uniquely bankruptcy causes of action vested by statute in a trustee and not a debtor.[3]

The act of filing a petition for relief under the Bankruptcy Code commences a bankruptcy case and creates an estate in bankruptcy. *See* 11 U.S.C. §§ 301 and 541. Upon commencement of the case, a debtor's interests in property vest in the bankruptcy estate, and the debtor surrenders the right to control estate property. Property of the estate falls under the exclusive jurisdiction of the bankruptcy court. *See* 28 U.S.C. § 1334(e). Since property of the estate is now in *custodia legis*, it is administered exclusively by a specifically designated fiduciary, a trustee. *See, e.g.,* 11 U.S.C. §§ 323(a), 363 and 704. All rights held by a debtor in the property are extinguished, unless the property is exempted from the estate under 11 U.S.C. § 522 or abandoned back to the debtor under 11 U.S.C. § 554. *See, e.g., Miller v. Pacific Shore Funding,* 287 B.R. 47, 50-51 (D.Md. 2002); *Rowland v. Novus Financial Corp.,* 949 F.Supp. 1447, 1453 (D. Haw. 1996).

Property of the estate in the bankruptcy context is broad. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-5 (1983). The estate is comprised "*all* legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). And, the reference to "all" in § 541(a)(1) means all tangible or intangible interests. Congress meant what it said and said what it meant in delineating the encompassing contours of property of the estate. Accordingly, it is well settled that prepetition causes of action are assets included within the meaning of property of the estate. *See, e.g., Seward v. Devine*, 888 F.2d

---

[3] The merits of any assertions that the Judgment of Possession may be avoidable as a fraudulent conveyance or otherwise under 11 U.S.C. §§ 544 and 548 is not before the Court and we express no views in that regard.

-13-

957, 963 (2d Cir. 1989); *Bauer v. Commerce Union Bank, Clarksvill, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988); *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*, 816 F.2d 1222, 1225 (8th Cir. 1987); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986); *In re Smith,* 640 F.2d 888, 892 (7th Cir. 1981).

As property of the bankruptcy estate, a trustee has the duty to administer a prepetition cause of action, if he so chooses. He is the representative of the estate (11 U.S.C. § 323(a)) and has the capacity to sue on behalf of the estate (11 U.S.C. § 323(b)). Accordingly, it is also well settled that the trustee is the proper or real party in interest to prosecute prepetition causes of action. *See, e.g., Parker v. Wendy's International, Inc*., 365 F.3d 1268, 1272 (11th Cir. 2004); *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 1292 (11th Cir. 2003); *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1997); *Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 657 (4th Cir. 1997); *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988); *Vidal v. Doral Bank Corp.*, 363 F.Supp.2d 19, 22 (D.P.R. 2005); *Bailey v. Household Finance Corp. III (In re Bailey)*, 306 B.R. 391, 393 (Bankr. D.D.C. 2004); *In re Raymond Construction Co. of Florida, Inc.,* 6 B.R. 793, 797 (Bankr. M.D.Fl. 1980). Moreover, courts have consistently held that only the trustee and not a debtor has standing to pursue causes of action that belong to the bankruptcy estate. As summed up by a federal appeals court:

> Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition. Such property includes causes of action belonging to the debtor at the commencement of the bankruptcy case. Thus, a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate.

*Parker,* 365 F.3d at 1272 (citations omitted); s*ee also Cable v. Ivy Tech State College,* 200 F.


3d 467, 472 (7th Cir. 1999); *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.,* 187 F.3d 439, 441 (4th Cir. 1999); *In re New Era Inc.,* 135 F.3d 1206, 1209 (7th Cir. 1998); *Schertz-Cibolo-Universal City, Independent School District v. Wright (In re Educators Group Health Trust),* 25 F. 3d 1281, 1284 (5th Cir. 1994); *Bauer*, 859 F.2d at 441; *Darrah v. Franklin Credit (In re Darrah),* 337 B.R. 313, 316 (N.D.OH. 2005); *Williams v. United Technologies Carrier Corp.,* 310 F.Supp.2d 1002, 1010 (S.D. Ind. 2004); *Miller,* 287 B.R. at 50-51; *In re Costello*, 255 B.R. 110, 113 (Bankr. E.D.N.Y. 2000); *Ball v. Nationscredit Financial Services Corp.,* 207 B.R. 869, 872 (N.D.Ill. 1997); *Tyler House Apartments, Ltd. v. United States*, 38 Fed.Cl. 1, 6 (1997); *Rowland,* 949 F.Supp. at 1453; *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D.Pa. 1989); *Jefferson v. Mississippi Gulf Coast YMCA,* 73 B.R. 179, 181-82 (S.D.Miss. 1986).

Hopkins declares that her ownership of the Property by adverse possession matured in 2001, some four years prior to her bankruptcy filing. The adverse possession cause of action thus arose prepetition and is property of the bankruptcy estate. Clearly, only the trustee, as the representative of the estate, and not Hopkins has standing to sue on the claim. Yet, Hopkins insists otherwise. Characterized in most favorable terms, her arguments are mystifying. As best we can divine, Hopkins seems to say that she obtained ownership of the Property by adverse possession prior to the bankruptcy filing. Therefore, it is the Property that is part of the bankruptcy estate and not the cause of action for adverse possession. According to Hopkins, Foothill is the party claiming ownership of the Property and she is objecting to that claim. She asserts that she is a party in interest with standing to object to Foothill's claim because such objection could result in a solvent estate.

Hopkins' arguments are fallacious. She filed a complaint to determine an interest in

property pursuant to Fed. R. Bankr. P. 7001(2). Ownership by adverse possession cannot be established by declaration. The fact that Hopkins proclaims it is so, does not necessarily mean that it is so. She has submitted no authority for the proposition that one may establish ownership by adverse possession through mere assertion.

To acquire title by adverse possession under New York law, a claimant must prove by clear and convincing evidence that the possession is i) hostile under a claim of right, ii) actual, iii) open and notorious, iv) exclusive, and v) continuous for the statutory period. *See Ray v. Beacon Hudson Mountain* Corp., 88 N.Y.2d 154, 159, 666 N.E.2d 532, 535, 643 N.Y.S.2d 939, 942 (1966). The acquisition of title by adverse possession is an extraordinary concept. Its necessary effect is to bar the true owner's right to recover his property, extinguish his title, and vest absolute title in the wrongful possessor. *See Brand v. Prince*, 35 N.Y.2d 634, 636, 324 N.E.2d 314, 315, 364 N.Y.S.2d 826, 828 (1974). The acquisition of title to land by adverse possession is disfavored under New York law. *See Ray*, 88 N.Y.2d at 159; *Belotti v. Bickhardt,* 228 N.Y. 296, 308, 127 N.E. 239, 243 (1920). As a New York appellate court concluded:

> Since adverse possession [is] a means of cutting off legal claims to title, it has historically been strictly applied in the sense that all constituent elements must be proved, with the burden resting on the adverse claimant, with the adverse possessor's acts construed against him, and every inference in favor of a possession that is subordinate to the title of the true owner.

*Joseph v. Whitcombe*, 279 A.D.2d 122, 125, 719 N.Y.S.2d 44, 46 (1st Dep't 2001); *Lewis v. The New York & Harlem R.R. Co.,* 162 N.Y. 202, 220, 56 N.E. 540 (1900) ("The burden of proving all the facts necessary to constitute adverse possession is upon the one who asserts it, for in the absence of such proof  possession is presumed to be in subordination to the true title."); *Hammond v. Antwerp Light & Power Co.*, 132 Misc. 786, 791, 230 N.Y.S. 621, 629 (Sup. Ct.

Lewis Cty. 1928) (Title by adverse possession "can never be established by mere inference or conjecture but must be shown by clear and positive proof.").

Title to the Property by adverse possession was never even raised before a judicial tribunal prior to the filing of the bankruptcy petition by Hopkins. The property interest, apart from possession, that became property of the estate in this bankruptcy case was the adverse possession claim and not ownership of the Property. Since the cause of action is not exempt property and has not been abandoned, only the trustee has standing to pursue it.

Hopkins also has no standing to sue under the 11 U.S.C. §§ 544 and 548. These are provisions unique to the bankruptcy process that authorize the avoidance of property transfers under certain circumstances. They expressly authorize only a trustee to bring lawsuits thereunder. In that connection, the Supreme Court has taught "'[w]here a statute … names the parties granted [the] right to invoke its provisions … such parties only may act.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-7 (2000) (*quoting* 2A N. Singer, Sutherland on Statutory Construction § 47.23, p. 217 (5th ed. 1992). Accordingly, the general rule is that only the trustee may bring avoidance actions under the Bankruptcy Code. *See, e.g., James v. Planters Bank (In re James),* 257 B.R. 673, 675 (B.A.P. 8th Cir. 2001); *Cable,* 200 F.3d at 474; *Wade v. Midwest Acceptance Corp. (In re Wade),* 219 B.R. 815, 819 (B.A.P. 8th Cir. 1998); *Buchholz v. Pacesetter Corp. (In re Buchholz),* 297 B.R. 593, 596 (Bankr. D.N.D. 2003); *In re Scott,* 260 B.R. 375, 379 (Bankr. D.S.C. 2001); *Mulligan v. United States (In re Mulligan)*, 234 B.R. 229, 234 (Bankr. D.N.H. 1999); *Humphrey v. Herridge (In re Humphrey)*, 165 B.R. 578, 579 (Bankr. D.Md. 1993); *Goebel v. United States (In re Goebel),* 153 B.R. 593, 594 (Bankr. M.D.Fla. 1993). We see no reason why Hopkins should not fall under the general

rule which would preclude her from bringing actions under §§ 544 and 548.

If a trustee does not act under the avoidance provisions, 11 U.S.C. § 522(h) permits a debtor to do so under limited circumstances. Hopkins argues that she has standing under that provision. However, her reliance on § 522(h) is misplaced. Hopkins seeks to avoid the Judgment of Possession entered by the Civil Court in the Holdover Proceeding. If successful, only the possession of the Property by Foothill would be avoided. As indicated earlier, the Holdover Proceeding did not adjudicate title or ownership. Standing of a debtor under § 522(h) may be invoked only if an exemption would be available for the property upon avoidance. The State of New York offers no exemption for a possessory interest. Under the New York homestead exemption, a debtor may exempt a principal residence up to the sum of $50,000 in value, exclusive of liens and encumbrances, provided that the residence is not only occupied but also "owned." *See* N.Y. Debt & Cred. Law § 282 and N.Y. CPLR 5206. As the only interest that could be avoided is a possessory interest, New York's homestead exemption is unavailable to Hopkins. *See, e.g., In re Kleinman*, 172 B.R. 764, 772 (Bankr. S.D.N.Y. 1994) (stating that "ownership" in the context of the homestead exemption means having "good legal title").

Hopkins has had more than ample opportunity to seek ratification of this action by, or joinder or substitution of, the real party in interest, i.e., the trustee. *See* Fed. R. Civ. P. 17(a) made applicable hereto by Fed. R. Bankr. P. 7017. She has not done so. Nor can it be reasonably argued that Hopkins brought the action in her own name as a result of understandable mistake or because the determination of the correct party to bring the action was difficult. Accordingly, we believe this action should be dismissed under Rule 12(b)(6) for lack

of standing.[4]

### III. Conclusion

The trustee has exclusive standing to assert the adverse possession and avoidance causes of action. Hopkins may not, independent of the trustee, exercise legal authority over estate property. Nor may Hopkins invoke avoidance powers granted to the trustee by the express terms of the statute.

At the present time, the adverse possession claim is in a state of limbo. Hopkins has no standing to assert the claim, while the trustee has refrained from taking a position on the matter. This undesirable status can be addressed by employing the bankruptcy concept of abandonment. *See* 11 U.S.C. § 554. Abandonment contemplates removal of the subject property from the estate and its return to the debtor. The power to abandon property is within the discretion of the trustee. *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994). In the first instance, the trustee must make a determination whether the estate's interest in the adverse possession claim should be preserved, or whether such claim is of such dubious value or burdensome to the estate that it should be abandoned. Upon dismissal of this lawsuit, the trustee will be accorded a reasonable period of time to initiate proceedings asserting the adverse possession claim. If the trustee fails to do so, the adverse possession claim would revert back to Hopkins.

Based on all of the foregoing, Defendants' Motion to dismiss pursuant to Fed. R. Civ. P.

---

[4] According to the Advisory Committee's Notes under Fed. R. Civ. P. 17(a), the last sentence of Fed. R. Civ. P. 17(a) should not be "misunderstood or distorted." This provision was added "simply in the interests of justice" and "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17(a) Advisory Committee Notes, 1966 Amendments.

12(b)(6) is granted and the above-captioned adversary proceeding is dismissed. The case trustee is granted thirty days from the entry of this Decision and Order to initiate proceedings to establish title to the Property by adverse possession, failing which any such claim is deemed abandoned to Hopkins.

## IT IS SO ORDERED

Dated: Brooklyn, New York
       July 21, 2006

                                    s/Jerome Feller
                                    Jerome Feller
                                    United States Bankruptcy Judge